Mr. Jansen, may it please the court. My name is Paul Jansen. I'm from Johnson and Johnson County. There's two issues for consideration by the court. The first issue is whether or not the trial court erred in finding money that was contributed by both spouses during the marriage to the start-up of a business, whether or not that was engaged in the form of a loan as opposed to an active investment. And the second issue is the alternative. If the court does uphold that that money was in fact a loan, then we argue that it was an active investment. Now, the parties were married in 1993, and the parties filed for divorce in 2015. It was a 22-year marriage. They had two children. During the course of the marriage in 2008, the parties formed a business, Witvoet Tire Sales, that operated in the sales of tires. To start up that business, the parties contributed approximately $103,000. And this was from a marital estate? It was from a marital estate, yes. When the parties started the business, it was both the parties and Mike Lang's brother who started the business. The parties put $50,000 as a home equity line credit from their side to have a 50% interest, and then Mike Lang's brother contributed $50,000 as a 50% interest into the start-up of the business. Shortly thereafter, the start-up of the business, Mike Lang's brother became injured and was able to... All of this is not really relevant to the major issues, is it? Is it a question of how you treat that loan of, what, hundreds of thousands? Correct. That's the issue on appeals, whether or not the money that was contributed to start the business was in the form of a loan or if it was a capital... And what difference does it make? Because how was that business divided in the divorce? The court awarded 100% of the business to Mike Lang or acquitted. The business was delegated approximately $67,000 by stipulation. Mike Lang was awarded 100% of that business. The court also found that there was a note that was due only from the business to the shareholders of the business in the amount of $103,000. Which was the amount of the money out of the marital estate into the business, right? Correct. Okay. Now, the business was evaluated and was found to have a valuation of, I don't know what methodology they used, but $60,000, am I correct? Correct. Now, if that were a capital investment, would that business valuation change? Based on the way the evaluator did it, he did it basically as an ongoing concern. I don't think he valued it based on the assets of the business. Based on what the income and the money that was being generated as revenue in the business. So it was a cash flow valuation. A cash flow valuation, correct. So back to my original point, how would it make a difference in terms of the division of assets? Because it was a fairly long-term marriage. It was a long-term marriage, correct, a 23-year marriage. It makes a difference because the court basically awarded the note to Mike Lang saying that he has a right to collect $103,000 from the business. But at the same time, the court awarded 100% of the business to Mike Lang. So that's basically my second argument, I guess. Okay, but did you ever have a business? I mean, are you an equity partner? I'm not. Back when I was a real lawyer, I had a law firm. And when I put money in, it showed up as a loan. And why? Because when the problem started happening, I could pull that money out. I could just pay myself back and with no tax consequences. But it always showed up. But we told the government every year that here's this liability that I got. And this corporation did the same thing, right, listed this as a loan. Correct. The company did list it on Schedule A line 20 as a note of over one year. And I believe Mrs. Whitman did testify in trial that they set it up that way based on the advice of their accountant so they could get the money out. She never said for tax benefits, but that's kind of the implication, I believe, is that it was to receive favorable tax benefits in the future. So that's how they set the business up. If you do notice so on the Schedule A line 19, the notes of due shareholders, that line is blank. So the court ultimately did find that it was a loan due to shareholders on the line under Schedule A, and that should indicate that it's blank. What was indicated was that it was a note of greater than one year, I believe. So, yeah, Mrs. Whitman did testify that they set it up that way to get their money out in the future. But I did cite one case. It was a Senate versus Commissioner. It was a U.S. Tax Court memo that dealt with that line item on Schedule L and the factors that they do apply. I know it's not controlling to this court, but I believe it is persuasive on what the court should consider to find that there's actually a note that exists. But should your client have a great year, he can pay himself $50,000 without incurring any income, right? That's a yes. Right, if he treats it as paying back the quote-unquote loan. And, of course, that's what he'll do because that's why they listed it as a loan. That's the way this works in the real world. But there was no evidence as to what tax benefits he may or may not receive based on that. Well, it's common sense. When you take that 50 grand back out of the company, when you take the 50 grand back out of the company, it doesn't show up as personal income to you because you paid yourself back a loan. It was your money to begin with. They were holding it. You get it back. And so you get $50,000 to go out and buy a new boat and not have to pay any income tax on it. Correct. But certainly it's not going to be for the full amount of the loan. It won't be a tax savings, but it won't be the full $103,000. Well, who put the $103,000 into it? Where did the $103,000 really come from? Well, the $103,000 came from the part of when they started the business. But where did it really come from? You didn't say from her parents? Oh, $50,000 came from the home equity line credit that was paid off. When they bought out, my client's brother shared a big loan, $50,000, from the parents, which both were paid in full at the time of the trial. So there was no obligations to either of them at that point. So my argument is that based on the fact that the tax court, the sex court, it's not controlling, it's persuasive. But I think it's persuasive. There's no indication that this is actually a loan to anybody. There's no written instrument. There was never an attempt for payment. There was no interest ever collected. There's no formal indication that there actually is a loan. And if you look at the intent of the parties, I believe you just discussed the intent of the parties, that although she didn't come out and say it, she didn't imply that she did that to receive a tax compensation, it's not a loan. Well, except when you loan your own business money. If I loan a stranger money or something, you want interest on your money, right? But if you loan yourself money, the purpose of the loan is to get the money back out tax-free because you put the money in, it had already been taxed anyway. But if you pay yourself interest, that interest is taxable, so there's no point. You might as well take that. Instead of paying yourself that money as interest on that loan, you might as well pay it as salary or bonus or one of the ways. There's no advantage in that situation to attach the interest to that loan. Either way, you're going to pay tax on it. Sure, and it normally is a benefit, but when the parties go through a divorce, the court is supposed to find out what the assets of the marital estate are, and the court found that one of the assets was a note that they were owed $103,000. And the argument is that the note never existed. It wasn't a note. It was a start-up money to invest in a new venture. It was basically an ongoing concern that if they were going to receive any money back, it had to be from the profits of the business. The third category factor of the site is whether or not an independent third-party would loan money to the company. And again, it has to do with what are the assets of the company, what is their return. So again, it was start-up money. We don't think it was an asset. So is the argument we were just kidding the IRS? No. I mean, I don't think they have... I think that they've claimed from the IRS that it is under the Schedule L. But how they treat it with the IRS, I guess, is a little bit different than how the court finds what the assets of the marital estate are. I think it's two different things. Again, the court found this was the second largest asset of the marital estate. The marital residence being the first largest, it was approximately $260,000. The second largest asset was this note that they found. And we don't think there was ever any evidence that there was a note. The only written evidence that there was that this thing existed that was offered as the evidence was the indication on the Schedule L on 20, which is a loan or obligation of one year or greater. If I could turn to our second issue of real events. If the court does affirm that the trial court is finding that there was a note and it was awarded, like, should you award it to a client, then we think the trial court would use its discretion in providing the marital estate. Because what the court did was it assigned 100% of the equity of the business to my client and then assigned 100% of the note to my client and then awarded, basically, Mrs. Whitfield credit from the note. So one half of the note was about $51,000, approximately. So it gave her credit for that. And if you look at the numbers, ultimately, Mrs. Whitfield had to pay my client about $43,000. We find that that was an abuse of discretion. We argue that that was an abuse of discretion because, again, this note would be meaningless to my client, other than there are certain tax benefits that he might be willing to gather. But certainly after $103,000, he won't receive that type of benefit from it. But it's meaningless to my client because him and the business are essentially one of the same. He's a 100% owner of the business. All his income is derived from the business. So by awarding the note and the business to him, the two interests merge, and it doesn't have the value that the court assigned to it. We think that that's certainly an abuse of discretion when the court provided the asset. Counselor, you have two minutes. So based on our brief argument before Connor, we think that the money that the parties contributed to the start of the business was in the form of a capital compensation. And if an alternative, if the trial court is upheld on that issue, then we think that the trial court abused its discretion and it divided the admirable estate between the parties. Thank you. Thank you, Mr. Johnson. Thank you. Mr. Brown. Good morning, Justices. May it please the Court. For the record, my name is Paul Brown, and sitting to my left behind me is our Associate Genevieve Binning, a law firm of Brown & Edwards Chartered. We represent the Apple League in this case. I can tell you that our argument's going to be brief this morning because originally the docketing statement had listed six issues, but there's only really one issue. Although my learned opposing counsel raises it as two, it really is one issue in our opinion, and that is the trial court's classification of the loan. Justice Holdren has just brought up a very good point because really this is a push. Either it's a loan or it's a valuation against the business. This money just doesn't disappear off the balance sheet, and we believe that based upon the actual evidence that was presented to the trial court, the trial court made the proper decision. We agree as to the standard this is a question of fact, and therefore the reversal would only be if the trial court's decision was against the manifest way of the evidence. So really, what evidence did the trial court have in terms of making its decision? And we believe that the trial court had substantial evidence. Despite counsel's argument that it was just a question of whether it was a signed note or not, the trial court had Mrs. Whitford's testimony that the loan was booked since the inception of the company in March of 2005, instructions of the corporation's accountant, Daniel Hartree. That was uncontroverted. The trial court had the benefit of nine years of tax returns because it was testified and also tax returns were presented. This is some S corporation, so the 1120S returns were presented to the court at trial and it was also reviewed by the business evaluator, Mr. Brown. I will tell you that Mr. Brown is a very competent business evaluator. He is a certified public accountant. He's also a certified business evaluator through the IACPA, the American Institute of Certified Public Accountants. He's also a family law attorney. So he had a very unique position in terms of his opinions that were rendered to the court based upon his experience. And he not only reviewed the tax returns, and we're talking about tax returns from 2008 through 2016, all listing this debt. Now, counsel brings up the issue that it wasn't listed as a loan to shareholders. It was listed as a loan, long-term loan or note, of the obligation of the corporation. Now, also, what I think Mr. Whitgood ignores is that this was booked on the records of the company through QuickBooks. So Mr. Brown saw the tax returns, saw the QuickBooks, and properly adjusted, made an adjustment on the fair market value of the corporation by removing that debt and putting it on the merit-bound sheet. But again, the point is, we think this is a push, that either it's a proper loan and on the merit-bound sheet, or it goes towards evaluation of the company. Now, on cross-examination by Mr. Whitgood, the record reflects it, his attorney asked him, why did you do it that way? And the response from the business evaluator was, we used the equity method of evaluation, and we didn't think that it was proper. He didn't think it was proper to include these funds as part of that equity evaluation, so that's why it got removed from the corporation to the merit-of-estate balance sheet here. So we had tax returns since inception of the company, we had them on QuickBooks, we had it by testimony, and Mr. Whitgood's testimony was completely inconsistent. First, he said it was a loan. Then, the next day, after consulting with his attorneys, he said it wasn't a loan, and then he ended up saying, I think, that he didn't really know what it was. So from his standpoint, his testimony was incredible when it was referenced by the trial court in its decision that they didn't think his testimony was credible. I also want the court to know that this is really the first time that Mr. Whitgood's making this argument to the court in terms of equity investment versus the loan itself. His only argument at trial was, we don't have a loan document, it's not a written document at this point, and therefore, the court shouldn't consider it. So we think that that's not really proper for the court to consider. And what is his authority that he's asking the court to reverse the trial court's decision? He relies on four U.S. District Court or U.S. Federal Appellate Court decisions that all deal with tax issues, all deal with Internal Revenue Service's determinations of whether or not deductions or payment of interest or repayment of loans should be credited as taxable or not. Well, in this case, that doesn't apply because the trial court wouldn't be looking at it from that standpoint. The court would be looking at the actual evidence in terms of the intended parties and the business evaluators' recommendations and opinions on the issue. So we don't think that the federal tax cases here are really controlling or have any bearing in terms of the court's decision on the matter. So in closing, there's really about four points that I'd like the appellate court to consider. These arguments generally were not presented below, and there was no reply brief filed by Mr. Whitman in the case with regard to the arguments that we raised on that point. We'd like the court to consider that the trial court has sufficient evidence to make the decision that it did and that this is really a push argument. You either take it one way or the other, but it just can't fall off in terms of the court's allocation of assets in the situation here. And there was also, lastly, no authority or no argument to the trial court that the loan receivable was valueless. That's an opinion. There was substantial evidence in terms of the value of the company, the cash flow, the money that Mr. Whitman was receiving from the company, from his services. So the fact that he says it's valueless or worthless at this point, we think there was no evidence to support that whatsoever. So respectfully, we're asking the court to reform to affirm the trial court's decision. All right. Thank you, Mr. Brown. Thank you, Your Honors. Thank you, Justices. Have a good day. Mr. Johnson, some rebuttal? I have nothing to say tonight. All right. Well, thank you both for your arguments here this morning. This matter will be taken under advisement. Written disposition will be issued.